**Denise Elaine McCARTY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 60626.**

Court of Criminal Appeals of Texas, Panel No. 3.

April 22, 1981.

Rehearing Denied June 3, 1981.

---

James M. Murphy, Dallas, for appellant.

Henry M. Wade, Dist. Atty. and Ronald D. Hinds, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, W. C. DAVIS and McCORMICK, JJ.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for prostitution. Punishment was assessed at 90 days.

In her first two grounds of error appellant challenges the constitutionality of the prostitution statute. V.T.C.A., Penal Code Sec. 43.02(a)(1) provides:

"(a) A person commits an offense if he knowingly:

"(1) offers to engage, agrees to engage, or engages in sexual conduct for a fee;"

Appellant argues the term "offer" is unconstitutionally vague. New York has a similar prostitution statute, McKinney's Penal Law, Sec. 230.00, which provides:

"A person is guilty of prostitution when such person engages or agrees or offers to engage in sexual conduct with another person in return for a fee."

This statute was upheld against a similar challenge in the United States Court of Appeals for the Second Circuit. We adopt that court's reasoning from *United States v. Herrera*, 2nd Cir., 584 F.2d 1137, 1149:

"It is settled that the fair warning requirement embodied in the Due Process clause of the Fourteenth Amendment

prohibits the states from holding an individual 'criminally responsible for conduct which he could not reasonably understand to be proscribed.' *United States v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954); *Wainwright v. Stone*, 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973); *Rose v. Locke*, 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975). This prohibition against excessive vagueness does not, however, invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for 'in most English words and phrases there lurk uncertainties.' *Robinson v. United States*, 324 U.S. 282, 65 S.Ct. 666, 89 L.Ed. 944 (1945). All the Due Process clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden, and thus not lull the potential defendant into a false sense of security, giving him no reason even to suspect that his conduct might be within its scope. Even in criminal cases where the vagueness standard is more stringently applied, the statute must only present 'ascertainable standards of guilt.' *Winters v. People of State of New York*, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1944); *United States v. Petrillo*, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947).

"We have little doubt that the New York statute is not so vague that 'men of common intelligence must necessarily guess at its meaning.' *Connally v. General Construction Co.*, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). We do not believe that the defendants were 'required at peril of life, liberty or property to speculate as to the meaning of penal statutes.' *Lanzetta v. State of New Jersey*, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939). The New York statute clearly places men of reasonable intelligence on notice that they cannot promote prostitution. The definition of prostitution as being a person who engages or agrees or offers to engage in sexual conduct with another person in return for a fee is not so vague as to make persons of common intelligence guess at its meaning. Although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that can be sufficiently understood and complied with by the ordinary person exercising ordinary common sense. Moreover, even if the outermost boundaries of the statute may be imprecise, any such uncertainty has little relevance here where the defendants' conduct falls squarely within the 'hard core' of the statute's proscriptions. See *Broadrick v. Oklahoma*, [413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830] supra; *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); *United States v. National Dairy Products Corp.*, 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963); *Williams v. United States*, 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774 (1951); *Robinson v. United States*, 324 U.S. 282, 65 S.Ct. 666, 89 L.Ed. 944 (1945); *United States v. Wurzbach*, 280 U.S. 396, 50 S.Ct. 167, 74 L.Ed. 508 (1934)."

■ The definition of prostitution in Sec. 43.02, supra, likewise "is not so vague as to make persons of common intelligence guess at its meaning." The first two grounds of error are overruled.

■ Appellant next complains of the denial of her motion to quash the information. Here she argues that the allegation of "offer" gives her insufficient notice of the charges against her. The information alleged in relevant part that appellant did:

"Knowingly offer to engage in sexual conduct, namely: sexual intercourse and deviate sexual intercourse with E. L. Moses, for a fee."

Virtually all of the quoted language is descriptive of the offer: what conduct was offered, to whom it was offered, and that it was offered for a fee were all alleged. It was not error to deny the motion to quash.

Finally, appellant challenges the sufficiency of the evidence. The relevant portion of the record reveals the following testimony by the complainant:

"A. We drove south on Cedar Springs and turned on Throckmorton and shortly

after that I noticed the same car behind us again, so went from Throckmorton north on Dickason. I pulled off to the curb and we stopped. The car slowed and the female driving looked over and smiled and drove by us slowly.

"Q. Did the driver of the car do anything or make a motion?

"A. Looked and smiled.

"Q. Then what happened?

"A. She drove on north on Dickason and turned onto the parking lot in front of the Seven Eleven store, forty-two hundred block of Dickason.

"Q. Did you follow her?

"A. Yes, ma'am.

"Q. What did you do?

"A. Pulled up beside her on the same parking lot facing the same direction.

"Q. Which side of the car were you on?

"A. Right side of her car.

"Q. Then what happened?

"A. She talked out the window to us and asked what we were looking for.

"Q. Did you reply?

"A. I told her we were looking for some fun, and she asked what kind we were looking for, and I told her I wanted a head job and some pussy, and she said, 'Well, you found your fun.'

"Q. She said—and what did she say?

"A. She said, 'Well, you've found your fun.' And she asked, 'How much are you willing to spend?' And I told her—I conversed with Officer Stone and told her I had twenty or twenty-five dollars and Stone had fifteen dollars, and she said that's not enough. And I asked her how much it would take and she said, 'Well, I can't tell you price because you might be the police.'

"Q. Then what happened?

"A. She asked again, 'How much are you willing to spend?'

"Q. Did you ever give her a price at that time?

"A. No.

"Q. Then what happened?

"A. I told her I had more money than that but I didn't want to get ripped off.

"Q. What was her response to that?

"A. She still haggled over the price and said, 'I can't name the price because you might be the police.' And she asked me—she made a comment about I looked like a policeman and asked me where I was from and I told her I was from San Antonio, and she asked to see something with a San Antonio address, and at that time I got out of the car and walked around to the driver's side of her car and showed her a San Antonio driver's license, and we talked a little more about the price and then a few minutes later I reached in and got the ignition keys from her car and placed her under arrest."

 Appellant argues that the evidence shows that it was the testifying officer, and not appellant, who made the offer. Although the record indicates the initial offer was made by the complainant, it also shows protracted "negotiations," in which implied offers were made by both appellant and the complainant. We find the evidence sufficient and overrule the ground of error.

The judgment is affirmed.